# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| PEACH REO, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 2:12-cv-02752-SHM |
| | ) |
| RICHARD K. RICE, MALCOLM KYLE | ) |
| RICE, and THOMAS F. SCHAFFLER, | ) |
| | ) |
|     Defendants. | ) |

## ORDER

Before the Court are two motions. First, on September 15, 2016, Plaintiff Peach REO, LLC ("Peach REO") filed a Motion to Reopen. (ECF No. 77 ("Second Mot. to Reopen").) Defendants Richard K. Rice ("RKR"), Malcolm Kyle Rice ("MKR"), and Thomas F. Schaffler ("TFS") -- collectively, "Defendants" -- have not filed a response to the Second Motion to Reopen, and the deadline for doing so has passed. L.R. 7.2(a)(2).

Second, on September 15, 2016, Peach REO filed a Motion for Charging Order. (ECF No. 78 ("Charging-Order Mot.").) On September 30, 2016, MKR filed a response to the Charging-Order Motion. (Resp. and Mem. in Opp'n to Pl.'s Mot. for Charging Order, ECF No. 80 ("Charging-Order Resp."); see also Aff. of Malcolm Kyle Rice, ECF No. 79 ("MKR Aff.").) RKR and TFS have not responded to the Charging-Order Motion, and the deadline for do-

ing so has passed. L.R. 7.2(a)(2). On October 11, 2016, Peach REO filed a reply in support of the Charging-Order Motion. (Reply in Supp. of Mot. for Charging Order, ECF No. 81 ("Charging-Order Reply").)

For the following reasons, the Motion to Reopen is DENIED and the Charging-Order Motion is GRANTED in part and DENIED in part.

I. **BACKGROUND**

This history of this case was summarized in the March 2014 order granting Peach REO's summary-judgment motion and in the September 2016 order denying Peach REO's first motion to reopen. (Order Granting Pl.'s Mot. for Summ. J., ECF No. 72 ("March 2014 Order"); Order on Pl.'s Mot. to Reopen, ECF No. 76 ("September 2016 Order").) Since the Court entered the September 2016 Order, Peach REO has filed the Second Motion to Reopen and the Charging-Order Motion, MKR has filed the Charging-Order Response, and Peach REO has filed the Charging-Order Reply.

II. **ANALYSIS**

A. **Second Motion to Reopen**

The Second Motion to Reopen seeks the relief Peach REO requested in its June 2016 Motion to Reopen. (Compare Second Mot. to Reopen with Mot. to Reopen, ECF No. 74 ("First Mot. to Reopen").) Both ask the Court to "reopen" this case "so that [Peach REO] may engage in post-judgment execution that requires

orders from the Court."[1] (Second Mot. to Reopen 1; see also First Mot. to Reopen 1 (similar request).) The First Motion to Reopen was denied. (September 2016 Order.) The Court construes the Second Motion to Reopen as a motion for reconsideration of the September 2016 Order.

The standards governing the Second Motion to Reopen are unclear. Peach REO does not identify the Rule that applies. (See generally Second Mot. to Reopen.) The First Motion to Reopen shared this flaw. (See September 2016 Order 2 ("Peach REO does not cite any rule or statute as grounds for its Motion. It does not offer any relevant tests for the Court to apply.").) The Second Motion to Reopen cites Rule 69(a)(1)[2] and section 48-249-509 of the Tennessee Code (Second Mot. to Reopen 1). Neither provides a standard for assessing the Second Motion to Reopen.

Rule 54(b) governs revision of certain orders "before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." A judgment adjudicating all claims and the parties' rights and liabilities has been entered in this matter. (See note 1 supra.) Rule 54(b) does not apply. Rule 59 governs motions to alter or amend a judgment, and Rule

---

[1] Judgment was entered on March 13, 2014, after Peach REO's summary-judgment motion had been granted. (See March 2014 Order; J., ECF No. 73.)

[2] Unless otherwise noted, references to "Rules" are to the Federal Rules of Civil Procedure.

3

60(b) governs motions for relief from "a final judgment, order, or proceeding." The relief sought in the Second Motion to Reopen does not correspond to either rule.

The Court need not resolve this question. Under the Federal Rules and this district's Local Rules, movants seeking reconsideration or revision must generally show special circumstances that compel revisiting a prior order or judgment (e.g., new material facts, court mistake, etc.). See, e.g., Fed. R. Civ. P. 60(b) (setting requirements for motions for relief from judgments); L.R. 7.3(b) (setting district requirements for Rule 54(b) motions). Determining which rule applies is unnecessary if the Court considers the motion on its merits.

The Second Motion to Reopen is without merit for the same reasons that the First Motion to Reopen was without merit. As the September 2016 Order explained:

> After entering a judgment, a district court retains ancillary jurisdiction to ensure the judgment's execution. The Federal Rules of Civil Procedure provide for this . . . . The Sixth Circuit has observed that "'[t]he scope of postjudgment discovery is very broad.'"
>
> After entry of judgment, Peach REO is a judgment creditor and Defendants are judgment debtors. Plaintiff may obtain discovery from Defendants to the extent [Rule] 69(a)(2) allows, and the Court need not "reopen" the case for Peach REO to do so.

(September 2016 Order 3 (citations and footnote omitted).)

4

Nothing in the Second Motion to Reopen supports a different analysis. Peach REO states that it has filed a motion for a charging order, and that "[a] charging order . . . requires action by this Court, as a court of competent jurisdiction." (Second Mot. to Reopen ¶ 5.) Peach REO also states that it "anticipates filing additional motions for execution that require orders from the Court and/or writs to be issued by the Clerk." (Id. ¶ 6.) Peach REO cites no authority for the proposition that this Court must reopen the case to be a "court of competent jurisdiction" and does not explain why the orders or writs it contemplates require reopening the case. This Court has ancillary jurisdiction to ensure that its previously entered judgment is executed. It will exercise that jurisdiction as appropriate based on the parties' requests. Reopening the case is unnecessary.

The Second Motion to Reopen is DENIED.

**B.  Charging-Order Motion**

**1.  Charging-Order Relief**

The Charging-Order Motion prays for relief in four paragraphs. (Charging-Order Mot. 2–3.) Paragraph 1 seeks a charging order "against the interests of [MKR]" in eight limited-liability companies ("LLCs"): (1) Cash Depot of Mississippi, LLC ("CDM"); (2) Cash Depot of Tennessee, LLC ("CDT"); (3) Cash Depot Title Loans of MS, LLC ("CDTLM"); (4) Palladian Partners IV,

5

LLC ("PPIV"); (5) Palladian Partners 2001 LLC ("PP2001"); (6) Financial Management Services, LLC ("FMS"); (7) Palladian Partners V, LLC ("PPV"); and (8) M. Kyle Rice Properties, LLC ("MKRP"). (Id. at 2.) Paragraph 2 asks that the charging order "direct that [Peach REO] has the rights, to the full extent of the Judgment entered in favor of [Peach REO] against [MKR], as a transferee of the financial rights of [MKR]" in the eight LLCs. (Id. at 2–3.)

Peach REO alleges that MKR is a member of PPIV and MKRP. (Charging-Order Mot. 2.) MKR denies this. (Charging-Order Resp. ¶ 2; MKR Aff. ¶ 9.) The Charging-Order Reply does not address MKR's denial. (See generally Charging-Order Reply.) The charging-order remedy applies when a judgment debtor is a member of an LLC. See, e.g., Larry E. Ribstein & Robert R. Keatinge, Ribstein and Keatinge on Limited Liability Companies § 7:8 (2017). When a judgment debtor is not a member of an LLC, the charging-order remedy is inappropriate as to that LLC. On this record, the Court cannot determine whether MKR is a member of PPIV or MKRP. The request for a charging order as to PPIV and MKRP is DENIED. In what follows, the remaining six LLCs -- CDT, FMS, CDM, CDTLM, PP2001, and PPV -- will be referred to as the "Relevant LLCs."

The Charging-Order Motion invokes Rule 69(a)(1). (Charging-Order Mot. ¶ 3.) Under Rule 69(a)(1),

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution -- and in proceedings supplementary to and in aid of judgment or execution -- must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Peach REO has a money judgment that this Court may enforce, and this Court is located in Tennessee. The Court's execution procedure must accord with Tennessee law unless a federal statute governs.

No relevant federal statute governs the Court's execution procedure. Therefore, Tennessee law controls. Because Tennessee courts apply Tennessee choice-of-law rules, see, e.g., State ex rel. Smith v. Early, 934 S.W.2d 655, 657 (Tenn. Ct. App. 1996) (quoting Restatement (Second) of Conflict of Laws § 6(1) (1971); citing Hataway v. McKinley, 830 S.W.2d 53, 59 & nn. 2–3 (Tenn. 1992)), this Court applies those rules.

Each Relevant LLC has its own operating agreement; each contains a choice-of-law provision.[3] Tennessee choice-of-law rules generally honor contractual choice-of-law provisions:

---

[3] The operating agreements of CDT and FMS provide that those agreements "shall be interpreted and construed in accordance" with Tennessee law. (Operating Agreement of Cash Depot of Tennessee, L.L.C. § 16.3, ECF No. 79-1 ("CDT Agreement"); Operating Agreement of Financial Management Services, L.L.C. § 16.3, ECF No. 79-4 ("FMS Agreement").) The operating agreements of CDM and CDTLM provide that those agreements "shall be interpreted and construed in accordance" with Mississippi law. (Operating Agreement of Cash Depot of Mississippi, L.L.C. § 16.3, ECF No.

7

> Tennessee follows the rule of lex loci contractus. This rule provides that a contract[4] is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.
>
> If the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met. The choice of law provision must be executed in good faith. The jurisdiction whose law is chosen must bear a material connection to the transaction. The basis for the choice of another jurisdiction's law must be reasonable and not merely a sham or subterfuge. Finally, the parties' choice of another jurisdiction's law must not be "contrary to 'a fundamental policy' of a state having [a] 'materially greater interest' and whose law would otherwise govern."

Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citations omitted).

The Vantage Technology requirements are met here. There has been no showing that the members of the Relevant LLCs exe-

---

79-2 ("CDM Agreement"); Operating Agreement of Cash Depot Title Loans of Mississippi, L.L.C. § 16.3, ECF No. 79-3 ("CDTLM Agreement").) The operating agreements of PP2001 and PPV provide that "[a]ll questions with respect to the construction of this Agreement and the rights and liabilities of the parties shall be determined in accordance with" Delaware law. (Limited Liability Company Agreement of Palladian Partners 2001, LLC § 15.3, ECF No. 79-5 ("PP2001 Agreement"); Limited Liability Company Agreement of Palladian Partners V, LLC § 15.3 ("PPV Agreement"), ECF No. 79-7.)

[4] Under Tennessee law, an LLC's operating agreement is a contract. VRF Eye Specialty Grp., PLC v. Yoser, 765 F. Supp. 2d 1023, 1032 (W.D. Tenn. 2011) (citing River Links at Deer Creek, LLC v. Melz, 108 S.W.3d 855, 857 (Tenn. Ct. App. 2002)).

cuted the various choice-of-law provisions in bad faith. For each LLC, the choice-of-law provision selects the law of the state of its formation;[5] that state has an obvious material connection to the LLC. There has been no showing that the choice-of-law provisions were unreasonable, shams, or subterfuges. There has also been no showing that the choice-of-law preferences of the members of the Relevant LLCs were contrary to a fundamental policy of another state's law.

Because the Vantage Technology requirements have been met, the Court will apply the choice-of-law provisions in the Relevant LLC operating agreements. Tennessee law applies to CDT and FMS, Mississippi law applies to CDM and CDTLM, and Delaware law applies to PP2001 and PPV.

In the Charging-Order Response, MKR argues that a charging order is inappropriate because Peach REO "has failed to comply with the requirements for transfer of financial rights as provided by the statutes of Delaware, Tennessee and Mississippi and/or the pertinent articles of the respective Operating Agreements . . . ." (Charging-Order Resp. ¶ 15.) That argument relies on antiassignment provisions in the Relevant LLC operating agreements. (Id. ¶¶ 5, 10.) The operating agreements for CDT,

---

[5] Cf. CDT Agreement 1 (noting that CDT is a Tennessee LLC); FMS Agreement 1 (same for FMS); CDM Agreement 1 (noting that CDM is a Mississippi LLC); CDTLM Agreement 1 (same for CDTLM); PP2001 Agreement 1 (noting that PP2001 is a Delaware LLC); PPV Agreement 1 (same for PPV).

9

CDM, CDTLM, and FMS provide that, "[e]xcept as otherwise specifically provided herein, no Member may Transfer all or any part of his Membership Interest without the prior unanimous Approval of the other Members, which approval may be given or withheld in the sole and absolute discretion of each Member." (CDT Agreement § 13.1; CDM Agreement § 13.1; CDTLM Agreement § 13.1; FMS Agreement § 13.1.) The operating agreements for PP2001 and PPV provide that, "[s]ubject to any restrictions on transferability by operation of law or contained elsewhere in this Agreement, a Member may assign, sell, pledge, hypothecate or otherwise encumber . . . all or a portion of his Company Interest only upon the prior written consent of the Manager, which consent may be withheld in its sole discretion." (PP2001 Agreement § 10.2; PPV Agreement § 10.2(a).) MKR argues that these provisions bar this Court from entering a charging order governing MKR's financial rights in the Relevant LLCs.

Peach REO replies with two arguments. (See generally Charging-Order Reply.) First, Peach REO argues that the antiassignment provisions in the operating agreements are not controlling "because a charging order is not an assignment of the financial rights in the company." (Peach REO Reply ¶ 2; see also id. ¶ 4.) Second, even if a charging order would effect an assignment, the state statutes governing antiassignment provisions only allow LLCs to restrict assignments by LLC members. The

statutes do not restrict the ability of courts to effect assignments. (Id. ¶¶ 2, 5.)

Peach REO's first argument is dispositive. Under the relevant law of Tennessee, Mississippi, and Delaware, charging orders are liens, not assignments.

### a. Tennessee LLCs

The parties suggest that the applicable provisions of the Tennessee Code are sections 48-249-507 and 48-249-509. (See, e.g., Charging-Order Mot. 2; Charging-Order Resp. ¶¶ 3-4.) Those sections are part of the Tennessee Revised Limited Liability Company Act, Tenn. Code Ann. §§ 48-249-101 to 48-249-1133 ("Tennessee Revised LLC Act"). The Tennessee Revised LLC Act applies to Tennessee LLCs "formed on or after January 1, 2006." Tenn. Code Ann. § 48-249-1002(a). CDT and FMS were formed in 1997. (See, e.g., CDT Agreement 1; FMS Agreement 1.) The Tennessee Revised LLC Act does not apply to CDT or FMS.[6] Both are governed by Tennessee's earlier Limited Liability Company Act, Tenn. Code Ann. §§ 48-201-101 to 48-248-606 ("Tennessee LLC Act").

---

[6] A Tennessee LLC formed before January 1, 2006, can elect to be governed by the Tennessee Revised LLC Act by amending its articles of incorporation. Tenn. Code Ann. § 48-249-1002(b). Neither party suggests that CDT or FMS has made such an election. (See generally Charging-Order Mot.; Charging-Order Resp.; Charging-Order Reply.)

11

Under the Tennessee LLC Act, section 48-218-105 governs a judgment creditor's rights to a judgment debtor's interests in an LLC:

> On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge such person's financial rights with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of such person's financial rights under § 48-218-101. This section does not deprive any member or assignee of financial rights of the benefit of any exemption laws applicable to the membership interest. This section is the sole and exclusive remedy of a judgment creditor with respect to the judgment debtor's membership interest.

The text of the statute establishes that a charging order creates a lien, not an assignment. An assignment is a "transfer of rights or property." Assignment, Black's Law Dictionary (10th ed. 2014) (first definition). A lien is "[a] legal right or interest that a creditor has in another's property." Lien, Black's Law Dictionary (emphasis added). Unlike an assignment, a lien on property leaves the property in the original owner's hands. Section 48-218-105 empowers a court to "charge [a judgment debtor's] financial rights with payment of the unsatisfied amount of the judgment with interest." This does not contemplate a transfer of a judgment debtor's financial rights; it leaves them with the judgment debtor. A charging order is a lien.

The Tennessee Court of Appeals has confirmed this point, opining that "'[a] charging order constitutes a lien on the judgment debtor's distributional interest'" in an LLC. Rogers Grp., Inc. v. Gilbert, No. M2015-01044-COA-R3-CV, 2016 WL 2605651, at *1 (Tenn. Ct. App. May 3, 2016) (quoting 51 Am. Jur. 2d Limited Liability Companies § 23). Rogers Group construed section 48-249-509, the provision of the Tennessee Revised LLC Act parallel to section 48-218-105 of the Tennessee LLC Act. See id. at *2. The decision is nevertheless instructive because section 48-249-509 is similar to section 48-218-105. Compare Tenn. Code Ann. § 48-218-105 with id. § 48-249-509.

Because a charging order is a lien under Tennessee law, not an assignment, MKR's argument based on the antiassignment provisions in the CDT Agreement and the FMS Agreement fails. As to CDT and FMS, the relief sought in Paragraph 1 of the prayer for relief in the Charging-Order Motion is GRANTED.

In Paragraph 2 of the Charging-Order Motion's prayer for relief, Peach REO asks the Court to direct that Peach REO "has the rights . . . to the full extent of the Judgment entered in favor of [Peach REO] against [MKR], of a transferee of the financial rights of [MKR]" in, inter alia, CDT and FMS. The more appropriate language is set out in section 48-218-105. MKR's financial rights in CDT and FMS are charged with MKR's payment of the unsatisfied amount of the March 2014 judgment. Peach REO

has the rights of an assignee of MKR's financial rights under section 48-218-101.[7]

### b. Mississippi LLCs

The parties contend that the applicable Mississippi statutes are sections 79-29-703 and 79-29-705 of the Mississippi Code. (Charging-Order Resp. ¶¶ 8-9; Charging-Order Reply ¶¶ 3-4.) Sections 79-29-703 and 79-29-705 are part of the Revised Mississippi Limited Liability Company Act, Miss. Code Ann. §§ 79-29-101 to 79-29-1317 ("Mississippi Revised LLC Act"). The Mississippi Revised LLC Act applies, in relevant part, to Mississippi LLCs formed on or after January 1, 2011. Miss. Code Ann. § 79-29-1301(a). CDTLM was formed in 2004 (CDTLM Agreement 1), and CDM was formed in 1997 (CDM Agreement 1). The Mississippi Revised LLC Act does not apply to CDTLM or CDM. The superseded Mississippi LLC statutes govern those LLCs. See, e.g., Kinwood Capital Grp., LLC v. BankPlus (In re Northlake Dev. L.L.C.), 60 So. 3d 792, 795 n.4 (Miss. 2011).)

---

[7] Cf. Tenn. Code Ann. § 48-218-101(b) ("An assignment of a member's financial rights entitles the assignee to receive, to the extent assigned, only the share of profits and losses and the distributions to which the assignor would otherwise be entitled. An assignment of a member's financial rights does not dissolve the LLC and does not entitle or empower the assignee to become a member, to cause a dissolution, to exercise any governance rights, or, except as specifically provided by chapters 201-248 of this title, to receive any notices from the LLC, or to cause dissolution. The assignment may not allow the assignee to control the member's exercise of governance rights, and any attempt to do so shall be null and void.").

14

Under the Mississippi Revised LLC Act, section 79-29-705 governs creditors' rights. Miss. Code Ann. § 79-29-705. The parallel provision of earlier Mississippi law reads as follows:

> On application to a court of competent jurisdiction by a judgment creditor of a member, the court may charge the limited liability company interest of the member with payment of the unsatisfied amount of the judgment, with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the limited liability company interest. This article does not deprive any member of the benefit of any exemption laws applicable to his limited liability company interest.

Id. § 79-29-703 (Lexis through 1994 legislation; repealed 2010).

Peach REO's first argument is again dispositive: under Mississippi law, a charging order creates a lien and does not effect an assignment. The statutory text is instructive. Like the Tennessee LLC Act, the earlier Mississippi law provides that a charging order "charge[s] the limited liability company interest of the member with payment of the unsatisfied amount of the judgment." That describes a lien, not an assignment. The current Mississippi Revised LLC Act provides that charging orders are liens after discussing those orders in terms much like the terms used in earlier Mississippi law. Id. § 79-29-705(2) ("A charging order constitutes a lien on the judgment debtor's financial interest."); compare id. § 79-29-705(1) (present stat-

15

ute) with id. § 79-29-703 (Lexis through 1994 legislation; repealed 2010).

Because a charging order, under Mississippi law, is a lien, not an assignment, MKR's antiassignment-provision argument fails as to CDM and CDTLM. As to CDM and CDTLM, the relief sought in Paragraph 1 of the prayer for relief in the Charging-Order Motion is GRANTED.

In Paragraph 2 of the Charging-Order Motion's prayer for relief, Peach REO asks the Court to direct that Peach REO "has the rights . . . to the full extent of the Judgment entered in favor of [Peach REO] against [MKR], of a transferee of the financial rights of [MKR]" in, inter alia, CDM and CDTLM. The more appropriate language is set out in the relevant statutory provision, former section 79-29-703. MKR's LLC interests in CDM and CDTLM are charged with MKR's payment of the unsatisfied amount of the March 2014 judgment. Peach REO has the rights of an assignee of MKR's LLC interest under former section 79-29-702.[8]

---

[8] Cf. Miss. Code Ann. § 79-29-702 ("An assignment of a limited liability company interest does not dissolve a limited liability company or entitle the assignee to become or to exercise any rights of a member. An assignment entitles the assignee, to the extent assigned, to share in such profits and losses, to receive such distribution or distributions, and to receive such allocations of income, gain, loss, deduction, credit or similar items to which the assignor would have been entitled.") (Lexis through 1994 legislation; repealed 2010).

### c. Delaware LLCs.

The applicable provisions of Delaware law are sections 18-702 and 18-703 of title 6 of the Delaware Code. (Charging-Order Resp. ¶¶ 12-13; Charging-Order Reply ¶ 3; cf. Del. Code Ann. tit. 6, §§ 18-702, 18-703.)

Peach REO's first argument is again dispositive. Section 18-703 is titled "Member's limited liability company interest subject to charging order." Del. Code Ann. tit. 6, § 18-703. Section 18-703(b) provides that "[a] charging order constitutes a lien on the judgment debtor's limited liability company interest." Id. § 18-703(b). Under Delaware law, charging orders are liens, not assignments.

Because Delaware law treats charging orders as liens, not assignments, MKR's antiassignment-provision argument fails as to PP2001 and PPV. As to those LLCs, the relief sought in Paragraph 1 of the Charging-Order Motion is GRANTED.

In Paragraph 2 of the Charging-Order Motion's prayer for relief, Peach REO asks the Court to direct that Peach REO "has the rights . . . to the full extent of the Judgment entered in favor of [Peach REO] against [MKR], of a transferee of the financial rights of [MKR]" in, inter alia, PP2001 and PPV. The better language is the language of the relevant statutory provision, section 18-703(a). MKR's LLC interests in PP2001 and PPV are charged to satisfy the March 2014 judgment, and Peach REO

17

has the right to receive any distribution or distributions to which MKR would otherwise have been entitled as to those LLC interests.

### 2. Discovery Relief

Paragraph 3 of the Charging-Order Motion's prayer for relief asks the Court to "direct [MKR] to report to [Peach REO] any amount that is now due or may become due or distributable to [MKR] by reason of any [interests] in" CDM, CDT, CDTLM, PPIV, PP2001, FMS, PPV, and MKRP. (Charging-Order Mot. 3.) Paragraph 4 of the prayer for relief asks the Court to "direct [MKR] to report to [Peach REO] the assets of" those LLCs. (Id.)

Under Rule 69(a)(2), "[i]n aid of [a] judgment or execution, the judgment creditor . . . may obtain discovery from any person -- including the judgment debtor -- as provided in these rules or by the procedure of the state where the court is located." Of the traditional discovery devices in the Federal Rules of Civil Procedure, Peach REO's requests are most like interrogatories. MKR does not contest these requests. Peach REO is entitled to request this information through discovery. Fed. R. Civ. P. 69(a)(2).

The Charging-Order Motion is GRANTED as to the relief sought in Paragraphs 3 and 4.[9] MKR is ORDERED to provide the re-

---

[9] Peach REO should initially seek execution-related discovery from the judgment debtors or other persons pursuant to Rule

18

quested information within 30 days of the entry of this Order.[10]
Cf. Fed. R. Civ. P. 33(b)(2) (deadline for interrogatories). The provisions of Rule 33 governing answers to interrogatories shall apply to MKR's responses.

## III. CONCLUSION

For the foregoing reasons, the Second Motion to Reopen is DENIED.

The Charging-Order Motion is GRANTED in part and DENIED in part. The relief sought against Palladian Partners IV, LLC, and M. Kyle Rice Properties, LLC, in Paragraphs 1 and 2 of the Charging-Order Motion's prayer for relief is DENIED.

The relief sought against Cash Depot of Mississippi, LLC; Cash Depot of Tennessee, LLC; Cash Depot Title Loans of MS, LLC; Palladian Partners 2001 LLC; Financial Management Services, LLC; and Palladian Partners V, LLC, in Paragraph 1 of the Charging-Order Motion's prayer for relief is GRANTED.

The relief sought against those six LLCs in Paragraph 2 of the Charging-Order Motion's prayer for relief is GRANTED as

---

69(a)(2) before asking for the Court to compel production of information.

[10] Because MKR denies being a member of PPIV or MKRP, the Court has denied Peach REO's request for a charging order as to them. The Charging-Order Motion's request for information from MKR about PPIV and MKRP does not depend on MKR's being a member of those LLCs. MKR must respond to Peach REO's interrogatories as to PPIV and MKRP to the extent he has knowledge.

19

stated in this order.  The six LLCs are charged to recognize and honor the March 2014 judgment against MKR in favor of Peach REO until that judgment has been fully satisfied.

The relief sought in Paragraphs 3 and 4 of the Charging-Order Motion's prayer for relief is GRANTED.  MKR is ORDERED to provide the requested information within 30 days of the entry of this Order.

IT IS SO ORDERED this 11th day of July, 2017.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE